O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AVELINA M. ROBLES MARTINEZ, | ) | CASE NO. CV 10-07583 RZ |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Avelina Robles Martinez contends that the Social Security Commissioner wrongly denied her claim for disability benefits. Plaintiff argues that the Administrative Law Judge ("ALJ") improperly evaluated her credibility and her treating physicians' opinions. The Court agrees in part, as explained below.

Plaintiff first argues that the ALJ's credibility assessment was erroneous. An ALJ need not accept a claimant's statements as to subjective pain or symptoms, but can reject them for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 834 (1996). Plaintiff asserts that the reasons cited by the ALJ were not legitimate.

The ALJ first stated that the objective medical evidence did not fully support Plaintiff's complaints. (AR 17.) An ALJ is permitted to consider whether a lack of medical evidence supports a claimant's testimony, but this reason "cannot form the sole basis for discounting" the claimant's credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681

(9th Cir. 2005). The Court need not address whether this reason is legitimate because the ALJ provided no other valid reason for discounting Plaintiff's credibility in this case.

The ALJ also asserted that Plaintiff's daily activities were inconsistent with her alleged limitations. The ALJ stated that Plaintiff's daily activities included driving, lifting up to twenty pounds, shopping, dusting, vacuuming, washing dishes, cleaning mirrors, and doing yard work. (AR 18.) The ALJ failed to mention, however, the difficulties and limitations Plaintiff experiences in performing these tasks.

Thus, Plaintiff testified that she could drive only five or ten miles "[b]ecause of the pain," and that it was "very painful" for her to twist her neck when changing lanes. (AR 28, 37.) She also explained that pain in her wrists and hands makes it difficult for her to write, drive, lift, and hold, grasp or pinch objects. (AR 33.) For example, she explained that she could vacuum for only five to ten minutes because "grasping the vacuum cleaner . . . causes very much pain" in her hand, thumb and wrist. (AR 47.) Plaintiff also explained that she always takes her husband shopping with her so he can carry the groceries. (AR 48.) In addition, Plaintiff clarified that the only "yard work" she performed was watering plants. (AR 46-47.) Plaintiff's Daily Activities Questionnaire, which the ALJ cited, further detailed the difficulties she experiences in performing her daily activities. Plaintiff wrote, for example, that she has "constant pain in both hands"; she cannot "handle" much activity because she "get[s] tired [and] [has] to manage pain in [her] hands, neck [and] shoulder"; her hands hurt "a lot" when she combs her hair; she experiences pain when "lifting, gripping, grasping or twisting" objects; numbness in her hands causes her to drop things; she can lift only "small items"; and she experiences pain in her hands when watering plants or sweeping. (AR 162-65.) In sum, Plaintiff's daily activities do not contradict her allegations or demonstrate an ability to perform substantial gainful activity. This reason therefore does not clearly and convincingly detract from her credibility. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The final reason the ALJ provided for discounting Plaintiff's credibility was that Plaintiff's "course of treatment has been quite conservative." The ALJ stated that Plaintiff "admit[ted] that she only uses Tylenol or ibuprofen . . . for pain and admit[ted] that she no longer uses wrist braces or any other assistive devices." (AR 18.) The ALJ did not mention Plaintiff's testimony that the ibuprofen she takes is at prescription-strength, and that she is bothered by its side effects. (AR 44.) Nor did the ALJ mention that Plaintiff wears compression bandages on both wrists and performs various exercises to alleviate pain in her wrists, hands, and neck. (AR 32-35, 37.) Moreover, the ALJ did not explain what additional treatments Plaintiff could undergo to alleviate her pain.[1] Plaintiff has already undergone carpal tunnel release surgeries on both wrists (AR 352), and Plaintiff testified that two physicians told her there was nothing more they could do for her hands. (AR 43; *see* AR 380-81.) Accordingly, even if Plaintiff's course of treatment could be characterized as conservative, it does not clearly and convincingly detract from her credibility because she had valid reasons for not undergoing more aggressive treatment. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff also challenges the ALJ's evaluation of the opinions of two of her treating physicians, Drs. Larsen and Masserman, who evaluated her as part of her workers' compensation claim. The Court finds no error here. Dr. Larsen opined that, for her spine, Plaintiff should avoid heavy lifting, repetitive motion of the neck, and keeping her head "in one fixed position for a prolonged period of time." With respect to her wrists, Plaintiff lost "between 25 and 50 percent of her pre-injury capacity for lifting, pushing, pulling, grasping, pinching, holding, torquing, and performing other activities in comparable physical effort, as well as activities requiring finger dexterity." (AR 353.) Dr. Masserman opined that Plaintiff was incapable of "prolonged sitting in one position, prolonged typing,

---

[1] To the extent the ALJ had in mind Plaintiff's decision not to undergo neck surgery, Plaintiff explained that she did not want to "take a chance" with additional surgery after the carpal tunnel surgeries were unsuccessful. (AR 39; *see* AR 352.) Moreover, Plaintiff's decision to put off neck surgery does not undermine the significant complaints she has about her hands and wrists.

or rapid or vigorous neck movements." (AR 479.) The ALJ stated that he gave "considerable weight" to Dr. Larsen's opinion and "substantial weight" to Dr. Masserman's. (AR 18.) Indeed, the ALJ's residual functional capacity assessment reasonably accommodated their opinions: Plaintiff was restricted to light work; could only occasionally handle and finger objects (i.e., gross and fine manipulation); could sit for only two hours per eight-hour workday, and needed to stand and stretch "for several minutes" after sitting for one hour; and could not perform "repeated, vigorous, or rapid neck rotation, flexion or extension." (AR 16.) Accordingly, the ALJ did not err in evaluating Drs. Larsen's and Masserman's opinions.

Finally, Plaintiff contends the ALJ erred in evaluating the opinion of another treating physician, Dr. Sullivan. Dr. Sullivan completed a residual functional capacity questionnaire and opined that Plaintiff could occasionally lift weights of ten pounds or less and never lift heavier weights, and that Plaintiff could not use her hands, fingers or arms to perform any grasping, turning, twisting, fine manipulating, or reaching. (AR 383-89.) The ALJ rejected this opinion, finding that Plaintiff's limitations were not so extreme. The ALJ explained that he rejected Dr. Sullivan's opinion "based on the medical evidence and observations of [Plaintiff] at the hearing," and "an absence of sufficient clinical data in Dr. Sullivan's own treatment records to support such a conclusion." (AR 19.) These reasons are supported by substantial evidence and constitute specific and legitimate reasons for rejecting Dr. Sullivan's opinion. Notably, aside from a single office visit in which Plaintiff relayed her problems stemming from carpal tunnel syndrome (AR 380-81), the records from Dr. Sullivan's group do not mention any significant problems with Plaintiff's hands, arms, or neck. (AR 250-341, 481-90.) Accordingly, the ALJ did not err in evaluating Dr. Sullivan's opinion. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that an ALJ may reject a physician's opinion that is "not supported by his own treatment notes").

///

///

In accordance with the foregoing, the decision of the Commissioner is reversed. The matter is remanded to the Commissioner, who shall reassess Plaintiff's credibility and otherwise proceed as appropriate.

IT IS SO ORDERED.

DATED: November 28, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE